IN RE: THE ESTATE OF LETITIA V. GRAHAM, DECEASED; W. B. DICKENSON, JR., individually and as surviving partner of Dickenson & Dickenson, a firm composed of W. B. Dickenson, Sr., now deceased and W. B. Dickenson, Jr., and Harry H. Wells, v. ERNEST BERGER and RILEY J. McMASTER, as Executors of said Estate.

23 So. (2nd) 485                                        June Term, 1945
October 5, 1945                                              En Banc
Rehearing denied Oct. 24, 1945

422

*Erle B. Askew, Richard T. Earle, Jr.* and *Clair A. Davis,* for appellants.

*Dupree and Cone, Gibbons, Vega and Gibbons, Whitaker, Whitaker & Terrell* for appellees.

SHIELDS, circuit judge:

This proceeding grows out of the unsuccessful attempt of Mrs. Beatrice Newport to procure the probate of a will alleged to have been executed August 20, 1937, by Mrs. Letitia V. Graham, deceased. It is an appeal from a final decree and judgment made and entered by Honorable R. H. Rowe, Circuit Judge, acting as Judge pro hac vice of the Circuit Court of

Hillsborough County, July 28, 1944, affirming a decree of Honorable Paul D. Barns, Circuit Judge, acting as Judge pro hac vice of the County Judge's Court of said County, made and entered October 21, 1943, by which he denied the petition of appellants praying for allowance of counsel fees in the sum of $75,000.00 from Mrs. Graham's Estate for services rendered in said attempt of Mrs. Newport, the proponent and named as executrix in said alleged will.

Mrs. Graham died December 16th and on December 20th, 1938, Mrs. Newport, by her attorneys, offered for probate the alleged will of 1937 in which she was not only named as executrix but was the principal beneficiary. The probate was contested by relatives of Mrs. Graham and by the curator of her estate, and on July 1, 1940, Honorable Harry N. Sandler, Circuit Judge, acting pro hac vice as County Judge of Hillsborough County by reason of the disqualification of Honorable G. H. Cornelius, County Judge of said County, made a decree denying probate of said will, holding that at the time of its alleged execution Mrs. Graham was without testamentary capacity and that the alleged will was a forgery and a creature of fraud. And on July 19, 1940, Judge Sandler, acting as aforesaid, made a decree denying petitions of Mrs. Newport to be allowed costs, expenses and attorneys fees incurred in her efforts to probate the alleged will. From these decrees an appeal was taken to the Circuit Court of Hillsborough County and Honorable Alto Adams, then Circuit Judge, acting pro hac vice as Circuit Judge of Hillsborough County, on November 25, 1940, made and entered a decree and judgment reversing said decrees of the County Judge's Court, and holding that the proposed will was valid and ordering that it be probated. From this judgment an appeal was taken to this Court which on December 19th, 1941, reversed the Circuit Court of Hillsborough County and sustained the decrees of Judge Sandler, acting as County Judge. Watts, et al., v. Newport, 149 Fla. 181, 6 So. (2nd) 829.

While that case was pending in this Court Mrs. Newport and her attorneys filed their application to this Court to fix and allow the amount of their costs, expenses and attorneys fees and to direct that the same be paid out of the assets of

the estate of Mrs. Graham. In a per curiam decision made March 31, 1942, this court entered an order denying the application of Mrs. Newport and her attorneys, but without prejudice, and with permission to apply to the County Judge's Court of Hillsborough County for the allowance of such costs, expenses and attorneys fees. Watts, et al., v. Newport, In Re: Graham's Estate, 150 Fla. 288, 7 So. (2nd) 104.

On May 22, 1942, by virtue of said permission, Mrs. Newport, two of her attorneys and the representatives of the third who was then deceased, filed in the County Judge's Court of Hillsborough County their application to be allowed and paid from Mrs. Graham's Estate costs and expenses and reasonable attorneys fees incurred in their efforts to probate the alleged will.

On the same day, May 22, 1942, Mrs. Newport and her attorneys and the representative of the one then deceased applied to this Court for an order clarifying and modifying its order last referred to and upon hearing and consideration this Court on July 24, 1942, speaking through then Justice, now Chief Justice, CHAPMAN, rendered its opinion and entered its order and judgment upon said application for modification and clarification. Watts, et al., v. Newport, In Re: Graham's Estate, 151 Fla. 209, 9 So. (2nd) 417.

Honorable Paul D. Barns, Circuit Judge, was assigned to act pro hac vice as County Judge of Hillsborough County by reason of the disqualification of the Honorable Harry N. Sandler, and to hear and determine the issues raised by the petitions of Mrs. Newport and her attorneys for costs, expenses and attorneys fees, and the answer and objections thereto by relatives of Mrs. Graham and the curator of her estate. After the opinion on the application for clarification was rendered the joint petition filed May 22, 1942, by Mrs. Newport and her attorneys for costs, expenses and attorneys fees was abandoned and on November 16, 1942, by permission of Court, she filed in said County Judge's Court her separate petition to be allowed out of said Estate compensation for her services and for her costs and expenses. This petition was finally abandoned and dismissed. Also on November 16, 1942, by permission of court, Mrs. Newport's attorneys, one acting

both individually and as surviving partner of a firm that had originally represented her, appellants here, filed their separate petition to be allowed from said Estate expenses and attorneys fees in the sum of $75,000.00 for services in the attempt to probate said will. They finally abandoned their claim for expenses but insisted on their claim for attorneys fees. The petition states that their services were rendered in good faith to the estate of Mrs. Graham and prays for an order fixing and allowing such fees. Their claim was opposed by appellees here who had been appointed executors under a will of Mrs. Graham executed June 19, 1934, and admitted to probate December 7, 1942. After hearing and considering testimony and evidence submitted and argument of counsel Judge Barns on October 21, 1943, made and entered a decree denying the petition of appellants for attorneys fees.

From Judge Barns' order an appeal was taken to the Circuit Court of Hillsborough county, Florida, and on July 28, 1944, Honorable R. H. Rowe, Circuit Judge, acting pro hac vice as Circuit Judge of Hillsborough County, Florida made and filed his decree and judgment affirming the order of Judge Barns and from that judgment of affirmance this appeal was taken to this court.

Ten separate grounds of error are assigned. From them it appears that there are two main contentions of appellants.

First, they contend that Judge Barns, in arriving at his decision, failed to follow and observe in the respects hereinafter indicated the rules of law applicable to allowance of fees to attorneys for services rendered in connection with the attempted probate of wills and especially those rules laid down by this Court in its former opinions on this phase of the case.

And Second, they contend that the evidence presented to and considered by Judge Barns wholly failed to support his finding that the appellants are not entitled to receive anything from the estate of Mrs. Graham, and that his finding was contrary to the weight of the evidence.

And they claim that Judge Rowe, in affirming the decision of Judge Barns, committed error for which his judgment should be reversed.

Before taking up the question of the sufficiency of the evidence it is necessary to consider the applicable law. The appellants rely upon Sections 51 (Sec. 732.14, F.S.A.), 94 (Sec. 732.58, F.S.A.), 124 (Sec. 733.20 F.S.A.), and 158 (Sec. 734.01, F.S.A.) of the Probate Act. Chapter 16,103, Laws of Florida, Acts of 1933, and upon the opinion of this Court reported in Watts, et al., v. Newport, In re Graham's Estate, 151 Fla. 209, 9 So. (2nd) 417.

It does not appear that either Section 94 (Sec. 732.14 F.S.A.) or Section 124 (Sec. 733.20 F.S.A.), of the Probate Act can have any bearing now on this situation.

The paragraph of Section 158 of the Probate Act (Sec. 734.01, F.S.A.), relied on provides:

"Any attorney who has rendered services to an estate, or the personal representative, may apply to the court by petition for an order making an allowance for attorney's fees, and after notice to persons adversely affected, the Court shall make such order with respect thereto as shall be proper."

This seems to be a declaration of the equitable principle that an attorney who had been employed to obtain or create a fund for the joint benefit of all parties or whose efforts have enhanced the value of or resulted in preserving such a fund may if successful in his efforts have the right to be compensated from the fund for his services. Lewis, as Executor etc., et al., v. Galliard, 70 Fla. 172, 69 So. 797.

And in order for attorneys to recover under this Section the services rendered must have benefitted the estate. Smith, et al., v. Callison, et al., 152 Fla. 516, 12 So. (2nd) 381.

Section 51 of the Probate Act, Section 732.14, F.S.A., is as follows:

"732.14 Costs. In all probate proceedings costs may be awarded in the sound judicial discretion of the County Judge, ordinarily abiding the result of each particular proceeding, but otherwise when it would be unjust that the failing party pay costs.

"When such costs are to be paid out of the Estate, the County Judge may, in his sound judicial discretion, direct from what portion of the Estate they shall be paid.

"An executor, being prima facie justified in offering a will, in due form, for probate, shall generally receive his costs and attorneys fees out of the estate, even though he be unsuccessful."

The last paragraph of this section also seems to be declaratory of a general rule of law applied in probate matters which charges one offering for probate a will in which he is named executor with the exercise of good faith and generally allows him costs and attorneys fees even though unsuccessful. 21 American Jurisprudence, Sec. 549, p. 690; 33 Corpus Juris Secundum, Sec. 223, p. 1209.

To the writer the clear meaning of the words of the last paragraph of Section 51 of the Probate Act, (732.14 F.S.A.) is that if an executor is prima facie justified in offering a will in due form for probate, that is, if he, the executor, is acting in good faith, he, the executor, shall generally be entitled to be paid his costs and fees for his attorneys out of the estate even though unsuccessful, but shall not be entitled to be paid if he is not acting in good faith. Watts, et al., v. Newport, In Re: Graham's Estate, 150 Fla. 288, 7 So. (2nd) 104, and 151 Fla. 209, 9 So. (2nd) 417.

Nor is the writer able to gather from the words of said Section 51 any meaning which would entitle the executor's attorneys themselves to be paid under said section anything if the executor was acting in bad faith no matter how ignorant the attorneys were of his bad faith.

By the final judgment of this Court in Watts, et al., v. Newport, 149 Fla. 181, 6 So. (2nd) 829, it has been established that the will in which Mrs. Newport was named executrix and chief beneficiary, and in her attempt to probate which the services of appellants were rendered, was the creature of fraud and a forgery and that at the time of its alleged execution the supposed testatrix was without testamentary capacity. It also appears from the record that the payment by Mrs. Newport of any fees for services rendered here by appellants was purely contingent upon the success of their efforts to procure probate of the alleged will and that contingency, of course, has never happened. The appellants admit that Mrs. Newport

is not now liable to them for any fees. The facts on which this Court held that the alleged will was a creature of fraud and a forgery and that Mrs. Graham was without testamentary capacity at the time of its execution are clearly set out in the above mentioned opinion of Justice TERRELL reported in 149 Fla. 181, 6 Southern Second 829. Mrs. Newport was more interested in the sustaining the spurious will than anyone else. By it, out of Mrs. Graham's estate of more than $350,000.00, she, as residuary devisee and legatee, would have received well over $300,000.00. An examination of the record leaves little doubt that Mrs. Newport knew all about the spurious will long before Mrs. Graham's death, that she was inextricably enmeshed in the fraud and forgery which gave it birth and that she acted with the utmost bad faith in offering it for probate. In fact, as mentioned above, she has now abandoned entirely her claim for attorneys fees and also her claim to be paid for her services to the estate and her costs and expenses which were incurred in connection with the attempt to probate the will and which amounted to a large sum of money. So, the writer is of the opinion that neither Mrs. Newport nor her attorneys, however ignorant they were of her bad faith, are entitled to be awarded attorney's fees out of Mrs. Graham's estate under Section 51 of the Probate Act, (F.S.A. 732.14).

On the petition filed in this Court on May 22, 1942, by Mrs. Newport and her attorneys for clarification and modification of its opinion reported in Watts, et al., v. Newport, In re: Graham's Estate, 150 Fla. 288, 7 So. (2nd) 104, this Court rendered its opinion reported in 151 Fla. 209, 9 So. (2nd) 417. That opinion furnished "a yardstick of measurement to be applied by the County Judge's Court of Hillsborough County" in determining the question involved in the application of Mrs. Newport and her attorneys to be awarded out of Mrs. Graham's estate, costs and expenses incurred and fees for her attorneys for services rendered in the unsuccessful effort to procure probate of said alleged will of Mrs. Graham purported to have been executed August 20, 1937. That opinion establishes the law on this phase of this case.

The opinion first holds that an executrix, when offering a will for probate, is charged with the exercise of good faith,

and where she fails in that respect allowance of costs and attorneys fees from the estate will be denied.

The opinion then holds, in effect, that under Section 51 and 158 of the Probate Act, even though the executrix named in the will acted in bad faith in offering it for probate, yet her attorneys, themselves, if at the time they accepted employment they had no knowledge of, and no clue which would place them on notice of, her bad faith, may in the sound discretion of the County Judge be awarded reasonable fees for their services out of the estate.

There is no word in Section 51 of the Probate Act which provides that the attorneys for the executrix, themselves, may apply for and be awarded fees out of the Estate, but Section 158 of the Act expressly provides that they may. And the opinion does not hold that under said Section 51 alone the attorneys here would themselves be entitled to apply for and be awarded fees regardless of the bad faith of their client in offering the will for probate. As shown above, it is a prerequisite to attorneys being awarded fees under said Section 158 that their services be successful and result in benefit to the estate. Smith, et al., v. Callison, et al., supra. And, of course, the attorneys themselves would not even then be entitled to fees from the estate unless they were acting in good faith.

The opinion strongly indicated that the services of the attorneys in this case might be considered of benefit to Mrs. Graham's estate but it is expressly stated that it was not intended to foreclose or prevent the exercise of the jurisdiction and discretion to decide questions of this sort vested in the Probate Court by law.

The opinion further holds that under the Probate Act the Probate Court, subject to review on appeal, is clothed with discretionary power to award or disallow costs and attorneys fees to persons named as executors in wills offered by them for probate; and that the exercise of judicial discretion given the Probate Court in allowing or disallowing costs and attorneys fees to executors who present a will for probate may be reversed on appeal only for an abuse thereof.

After this opinion was rendered and after the amended petition was filed on November 16, 1942, this matter came on

for hearing as above stated before Judge Barns, acting as County Judge, on the separate petition of the appellants for the allowance of attorney's fees and the answer to that petition by the executors of Mrs. Graham's will.

Considerable testimony was taken and it was stipulated that the transcript of the testimony and the exhibits, documentary and otherwise, offered in the Newport will contest, Watts, et al., v. Newport, 149 Fla. 181, 6 So. (2nd) 829, should be part of the proceeding and considered by the court in so far as material. Said transcript and the record in the last mentioned case, as said by Justice TERRELL in his opinion, is one of the largest that ever came to this court.

At the beginning of the hearing appellants called attention to the statement in the opinion of this Court in the case of Watts, et al., v. Newport, In re Graham's Estate, 151 Fla. 209, 9 So. (2nd) 417, at page 420, as follows:

"It might well be said here that appellants' counsel frankly admit that the attorneys representing Mrs. Newport in this will contest acted in good faith, but denied that Mrs. Newport acted in good faith."

The attorneys for appellants here (appellees there) claim for these words the force of an estoppel in judicio, but in the same opinion this court said:

"We did not intend, by our former opinion and order nor do we intend here, to foreclose or prevent the exercise of the jurisdiction and the discretion to decide questions of this sort which is vested in the probate court by the Probate Act of 1933."

It does not appear that the words first quoted precluded an inquiry by the County Judge into the good faith of the appellants. He evidently considered those words to be of probative force but certainly did not hold, and should not have held, that they were conclusive of one of the very questions on which this controversy was submitted to him. His ruling and refusal to hold that these words were conclusive of this question is one of the specific errors assigned.

From the evidence and record before him Judge Barns did not find that Mrs. Newport's attorneys were acting in bad

faith when they accepted her employment but he did find "that under the facts and circumstances her attorneys may not have been required to withdraw from the case, but did proceed at their own hazard; i. e., with the red flag of danger flying high." This is apparent from the result which was the failure to establish the spurious will. He held that as to the Newport probate proceedings being a benefit to Mrs. Graham's Estate it seemed axiomatic that exposure to false and fraudulent claims was of no more benefit than exposure to contagious disease, and that establishment of immunity did not alter the principle, and he denied the petition for attorney's fees.

In his decree and judgment affirming Judge Barns, Judge Rowe, acting as Circuit Judge, said

"It is very difficult to see how the services of attorneys in endeavoring to probate a spurious will, resulting in the loss to the estate by way of expenses of nearly $100,000.00, can be said to benefit that estate."

And it is easy to see that, under the theory of appellants, if instead of one, several spurious wills had been offered here and the claims of the several alleged personal representatives and beneficiaries prosecuted with such vigor and ability as was exercised in this case, the entire estate might be consumed by the payment of fees for supposed benefits of the services of the attorneys for the several proponents.

In their petition the appellants based their main claim for fees on the allegation that the services of Mrs. Newport's attorneys were rendered in good faith to Mrs. Graham's Estate. The denial by the appellees of this allegation raised the real issue which was tried by the Probate Court. From an examination of the record one fact stands out above all others. It is gathered not from the testimony of any particular witness but from the record as a whole and, in view of this, it is unnecessary to set out or comment here on any particular part of the voluminous evidence. That fact is that Mrs. Newport's attorneys were never in any way representing Mrs. Graham's estate but that all of their skillful and untiring efforts were directed toward securing the major part of the assets of said estate for their client, Mrs. Newport. And the services rendered Mrs. Newport did not benefit Mrs. Graham's Estate.

In the case of Smith, et al., v. Callison, et al., 152 Fla. 516 12 So. (2nd) 381, cited above, the facts were similar to those here. That case grew out of an unsuccessful attempt to revoke the probate of a will in the Probate Court and the County Judge made an order allowing an attorneys fee to the unsuccessful contestants on the ground that the legal services rendered by their attorney in attempting to upset the will were beneficial to the estate in determining whether or not said will should be admitted to probate. On appeal this Court held that the main object of that litigation was to destroy the will and to recover the corpus of the property for the contestants themselves, contrary to the provisions of the will and adversely to the interests of all persons named therein; and that the allowance of fees in such a case to the unsuccessful contestants' attorneys was not authorized or warranted by Section 158 of the Probate Act.

In the case of Clarksdale Hospital v. Wallis, 187 Miss. 834, 193 So. 627, it was held that when services of attorneys were rendered for the sole benefit of an individual or group of individuals interested in an estate, as against the others interested, allowance of fees for such attorneys was not authorized.

The rule of decision controlling here is laid down in Watts, et al., v. Newport, 149 Fla. 181, 6 So. (2nd) 829; Sagonias v. Weeks, 143 Fla. 754, 197 So. 473.

There was substantial competent evidence to support the discretionary finding of the Probate Judge and it has not been made to appear that he or the Circuit Judge in affirming him misconceived its weight and probative force.

Therefore the judgment of the Circuit Court should be affirmed.

TERRELL, THOMAS and SEBRING, JJ., concur.

CHAPMAN, C. J., BROWN and BUFORD, JJ., dissent.

BROWN, J., dissenting:

The above opinion of Judge Bayard B. Shields is a very strong and able opinion, but under the rule of "the law of the case," which as to the main point here involved, was, as I view it, settled by the majority opinion and decision of this

court in the case of Watts, et al., v. Newport, in re the administration of the estate of Letitia V. Graham, deceased, 151 Fla. 209, 9 So. (2nd) 417, I must dissent. While under our former decision there might be some dispute as to the reasonableness of the amount of attorneys' fees to be allowed to the appellants, which matter was of course subject to adjudication, I think that under our former decision, above cited, appellants were and are entitled to reasonable compensation, and that the judgment appealed from should be reversed.

CHAPMAN, C. J., and BUFORD, J., concur.